J. A. POLLEY v. EDWARD E. JOHNSON *et al.*

1. CONVEYANCE *in Trust—Rights of Grantor's Creditors.* Where land is conveyed by the owner to another in trust to reconvey to the grantor's wife, or such person as the grantor may thereafter designate, and the grantee has no interest in the lands, but afterward executes such trust by a conveyance to the grantor's wife, as between grantor and his creditors, such lands will be treated as his property until reconveyed by the trustee; and the fact that such trust rests in parol, and is therefore not enforceable under the statute concerning trusts and powers, does not change the rule.

2. GROWING CROPS—*Attachment.* Annual crops which are the product of industry and care, sown by the owner of the soil, are, while growing and immature, personal property, subject to attachment and sale for the debts of the owner.

*Error from Lincoln District Court.*

ACTION by *Johnson* and others against *Polley* for an injunction. Judgment for plaintiffs, at the February term, 1890. The defendant brings the case here. The opinion states the facts.

*David Ritchie,* for plaintiff in error:

"A debtor cannot commit a fraud upon his creditor by disposing of property toward which the eye of the creditor need never turn. A debtor, in disposing of his property, can commit a fraud upon his creditor only by disposing of such of his property as the creditor has a legal right to look too for his pay;" therefore, the property in question being the homestead of Meer, and occupied as such by himself and children at the time the conveyance was made to Thews, its validity could not be successfully attacked upon the ground of fraud, as against the creditors of Meer. *Mull v. Jones,* 33 Kas. 112, and cases there cited; *Hixon v. George,* 18 id. 253; *Monroe v. May,* 9 id. 466; *Arthur v. Wallace,* 8 id. 267.

Under the laws of Kansas, an express trust concerning real estate can be created only in writing. The trust in the present case was not so created, and therefore it was void, and the

deed from Thrailkill to Mrs. Gee was absolute and valid. *Gee v. Thrailkill,* 45 Kas. 173.

See, also, 2 Nash, Pl., 4th ed., p. 862; *Smith v. Hague,* 25 Kas. 246; *Garanflo v. Cooley,* 33 id. 137; *Chapman v. Veach,* 32 id. 167; *Babcock v. Dieter,* 30 id. 172; *Beckman v. Sikes,* · 35 id. 120; *Smith v Leighton,* 38 id. 544.

Even if Meer had still owned the land at the time the supposed attachment proceedings were attempted to be had, even then the defendants in error could not, by virtue of said supposed attachment proceedings, obtain any right to the growing wheat on said land. We submit that the true rule is, and of right ought to be, that annual crops which are produced by industry, when planted by the owner of the soil, remain a part of the real estate to which they are attached until such time as they are ready to be harvested, and are not subject to execution until that time. Washb. Real Prop., 2d ed., p. 4, §§ 5–8; *Burleigh v. Piper,* 2 N. W. Rep. 520; *Ellithorpe v. Reidesil,* 32 N. W. Rep. (Iowa) 238. This last case seems to be on all-fours with the case at bar, and ought to be sufficient authority upon which to reverse the judgment of the court below.

*C. B. Daughters,* for defendants in error:

Counsel for plaintiffs in error contends that the conveyance to Thews conveyed the whole estate, including growing crops. We insist that it makes no difference who had title to the land. All the evidence shows that Meer owned the wheat at the time of the levy and sale. Besides, Thews had no real interest in the land at any time. In *Harrison v. Andrews,* 18 Kas. 535, the court says that a conveyance to a third party, for the sole purpose of having it transferred to first party's wife, conveys nothing but the bare legal title to the third party. The conveyance to Mrs. Meer was long after the constable's sale.

In many of the states the levy upon growing crops is controlled by statute. Our own statutes certainly authorize the levy and sale of growing crops in certain cases, and, by im--

plication, in all cases. See section 153 of justices' act. As authority in other states, see 42 Ind. 294; 7 Mass. 34; 83 Am. Dec. 206; 40 Ill. 292; 7 N. W. Rep. 819; 37 id. 639; 11 Atl. Rep. 744.

Growing annual crops are always considered as personalty. Benj. Sales, p. 125; Washb. Real Prop., § 5; also, p. 133, § 4; Hill, Real Prop., p. 16, § 64; Tied. Real Prop., §§ 70, 71; *Caldwell v. Custard*, 7 Kas. 307, and cases therein cited.

The opinion of the court was delivered by

ALLEN, J.: Defendants in error, as plaintiffs below, brought their action against plaintiff in error to enjoin him from harvesting and carrying away about 90 acres of wheat, grown on a quarter section of land in Lincoln county. The wheat was sown in the fall of 1888, by H. H. Meer, who then owned and occupied the land as his homestead. On the 4th day of October, he executed a deed for the land to Edward H. Thews. His wife was in the insane asylum at the time, and he signed the deed also as her guardian. On the 22d day of October, an attachment issued in a suit against Meer by a justice of the peace was levied on the crop of wheat, and on the 11th of December, 1888, the constable sold the same to the plaintiffs. Thews conveyed the land, on January 5, 1889, to Emma Meer, wife of H. H. Meer. He testified on the trial that he paid nothing for the farm, and was to deed it back to Meer's wife, if she got well, or any other party he traded with or sold to. On January 31, 1889, Meer and wife conveyed the land to defendant, Polley.

Two questions are raised by the plaintiff in error. (1) Was there anything that could be taken under the order of attachment issued against Meer by which the court could obtain jurisdiction? It is contended that the farm was the homestead of Meer, entirely exempt from the payment of his debts; that his creditors could not look in any event to this land for the satisfaction of their claims; that, as against them, the conveyance to Thews passed a full title, notwithstanding the want of consideration, and the secret understanding that Thews was to

hold it for the plaintiff and subject to the control of Meer; that, as the trust under which Thews held was created wholly by parol, it could not be enforced; that under the authority of *Gee v. Thrailkill*, 45 Kas. 173, Thews acquired the absolute title to the land, which carried with it the crop of growing wheat; that when the constable levied the attachment, Meer had no property either in the land or the growing wheat; and that he therefore at that time had no property in the wheat to be attached. Various cases are cited in support of the proposition that a conveyance of lands carries title to all growing crops thereon. There can be no question as to the correctness of this as a general proposition, but we think that this case clearly shows that Thews never had any real interest in the land. But assuming that it did pass the legal title to Thews, and, further, that the trust thereby created could not have been enforced in an action against him, yet as he has seen fit to recognize and execute the trust so created, and has in fact conveyed the land in accordance with the parol understanding between himself and Meer, we think the equitable title must be held to have never been transferred, and that the land

1. Conveyance in trust—rights of grantor's creditors.

and the wheat thereon was just as much the property of Meer after the execution of the conveyance to Thews as before. (*Harrison v. Andrews*, 18 Kas. 535.) We think this case must be considered as though no change of title occurred until the execution of the deed by Meer and wife to Polley, which was after the sale of the growing wheat.

The second contention is, that growing wheat sown by the owner of the soil is a part of the realty until ripe and ready to sever from the soil, and therefore is not subject to attachment as personalty. In support of this proposition, Washb. Real Prop., 2d ed., p. 4; *Burleigh v. Piper*, 2 N. W. Rep. 520; *Ellithorpe v. Reidesil*, 32 id. 238, are cited. The last of these authorities, which is a case decided by the supreme court of Iowa, fully sustains this contention, and it is said in the opinion:

"The whole proceeding was on the theory that the crops

were personal property, and could be levied on and sold as such; but while they remained immature, and were being matured by the soil, they were attached to and constituted part of the realty; they could no more be levied upon and sold on execution as personalty than could the trees growing upon the premises. This doctrine is elementary, and it has frequently been declared by this court. *Downard v. Groff*, 40 Iowa, 597; *Burleigh v. Piper*, 51 id. 650; *Hecht v. Dettman*, 56 id. 679; *Martin v. Knapp*, 57 id. 336."

It must be conceded that there is much force in the reasoning to sustain this position. It is a well-established rule that a conveyance of land, either by voluntary deed or judicial sale without reservation, carries all growing crops with the title to the land. (*Garanflo v. Cooley*, 33 Kas. 137; *Smith v. Hague*, 25 id. 246; *Chapman v. Veach*, 32 id. 167.) The value of the growing crop depends upon the soil for its support and nourishment, and, if disconnected at once, in a case like this, would be nothing. A levy and sale usually affords but little return to the crditor, while it is a serious loss oftentimes to the debtor. But whatever may be our individual views as to the policy of the law, we must be governed by it as we find it. In the case of *Beckman v. Sikes*, 35 Kas. 120, it was held that a sale under a mortgage foreclosure carried to the purchaser growing crops planted after the decree of foreclosure was entered, as against a purchaser who bought from the mortgagor the growing crop one day before the sale by the sheriff. In the opinion, the court says:

"The lien of the mortgage and the judgment, however, attached to the growing crops until they were severed, as well as to the land. The mortgagor planted the crop knowing that it was subject to the mortgage and liable to be divested by the foreclosure and sale of the premises. Anyone who purchased such crops from him took them subject to the same contingency, as the recorded mortgage and the decree of foreclosure were notice to him of the existence of the lien. If the land is not sold until the crops ripen and are severed, the vendee of the mortgagor would ordinarily get a good title; but if the land was sold and conveyed while the crop was still growing, and there was no reservation or waiver of the

right to the crop at such sale, the title to the same would pass with the land."

*Goodwin v. Smith*, 49 Kas. 351, holds:

"The purchaser at a judicial sale of mortgaged premises is entitled to the growing crop of wheat on the land against the tenant of the mortgagor who took a lease of the land after a suit for foreclosure had been commenced, and planted the wheat after judgment had been rendered in the foreclosure action, the purchaser having acquired a sheriff's deed on the 2d day of February, and the wheat not ripening and being ready for harvesting until the 20th day of June."

See, also, *Land Co. v. Barwick*, 50 Kas. 57.

In *Caldwell v. Alsop*, 48 Kas. 571:

"An owner of mortgaged land leased the same to another, and reserved as rent a share of the crop. He was in default in the payment of the mortgage, and insolvent. After default was made, and after the leasing of the premises, but before the rent was due, he sold his share of the crop rent to one who had notice of the mortgage and of the default. After the crop had fully matured, but while it was standing upon the land, foreclosure proceedings were begun and a receiver of the land appointed, but the court refused to authorize the receiver to take possession of the crop. *Held*, That the order of refusal was not error."

It will be observed that the decisions in all these cases relate to the rights of mortgagors, mortgagees, and parties claiming under them. In this case we have a different question to consider. There is no question here as to the effect of a voluntary incumbrance on the land, nor of a decree of foreclosure and sale thereunder. We have here the bare question as to whether immature growing crops are a part of the realty, as between debtor and creditor, or are personal property, subject to attachment and sale for debt. In *Caldwell v. Custard*, 7 Kas. 303, it was said "that growing crops are personal estate." In 1 Freeman on Executions (§ 113), it is said:

"Crops, whether growing or standing in the field ready to be harvested, are, when produced by annual cultivation, no part of the realty. They are therefore liable to voluntary transfer as chattels. It is equally well settled, that they may

be assigned and sold under execution. At common law, *fructus industriales,* as growing corn or other annual products, which would go to the executors upon death, may be taken upon execution."

The author cites a long list of authorities in support of his position. In 3 Washburn on Real Property (p. 367), the author says:

"But although a sale of growing crops of annual culture, not yet mature, would seem to carry with it an interest in land, since crop must stand upon and draw nutriment from the soil until it shall have grown and matured for the harvest, the cases appear to be quite uniform in holding that the property in the crop would pass, with a license to enter and sever the same; and some of the English cases put it upon the same ground as that by which one may hold emblements growing upon the soil of another. An attempt to sum up the results of the decisions, although they are not wholly harmonious, may be made as follows: *Fructus industriales,* as has been previously said, are, at common law, chattels, and are governed by the seventeenth section of the statute of frauds. This seems to be agreed by all the cases, though it is often difficult to decide what are *fructus industriales.*"

In Benjamin on Sales (p. 126), it is said:

"As to artificial or annual crops, *fructus industriales,* the law is quite clear that a sale thereof, in whatever state of maturity, and however long they are to remain in the soil in order to complete their growth, is a sale of personal property, and not of an interest in land."

In *Ayers v. Hawk,* 11 Atl. Rep. 744, two judgment creditors levied on what they both claimed to be a growing crop of corn, one making his levy after the corn was put in the ground, but before it had made its appearance above the surface. The other levied after such appearance. Held, that the first was a valid levy and entitled to priority. We think the authorities greatly preponderate in support of the proposition that annual crops, fruits of the labor of the tiller of the soil, are personal property, subject to levy and sale as chattels for the debts of the owner. (*Lindley v. Kelly,* 42 Ind. 294; *Pierce v. Roche,* 40 Ill. 292; *Johnson v. Walker,* 37 N. W. Rep. 640.)

For further citations bearing on this question, see particularly Freeman on Executions, above cited. The statutes of this state also seem to recognize this rule. The sixth subdivision of ¶ 2998 of the General Statutes of 1889, concerning exemptions, exempts "the necessary food for the support of the stock mentioned in this section for one year, either provided or growing, or both, as the debtor may choose." Paragraph 2824: "The emblements or annual crops raised by labor, and whether severed or not from the land of the deceased at the time of his death, shall be assets in the hands of the executor or administrator, and shall be included in the inventory." Paragraph 2825: "The executor or administrator, or the person to whom he may sell such emblements, may, at all reasonable times, enter upon the lands to cultivate, sever and gather the same." Paragraph 5008 (being part of the procedure before justices of the peace):

"In all cases where any lands may have been let, reserving rent in kind, and when the crops or emblements growing or grown thereon shall be levied on or attached by virtue of any execution, attachment or other process against the landlord or tenant, the interest of such landlord or tenant against whom such process was not issued shall not be affected thereby; but the same may be sold subject to the claim or interest of the landlord or tenant against whom such process did not issue."

While these sections do not reach the case we have under consideration, we think they show a recognition of what we regard as the settled doctrine of the common law: that such growing crops are personal property, subject to sale on execution for the debts of the owner; and, were we to hold a different rule to apply in this case, the only class of debtors benefited thereby would be those owning both the soil and the crop, for the section of the justices' act just quoted renders the shares of landlord and tenant, where that relation exists, both subject to levy and sale. It cannot be presumed that the legislature would intentionally exempt crops raised by the labor of the owner of the land, and at the same time subject to execution those raised by a tenant entitled to a share only for his

labors. However much we may disapprove of the policy of the law, we are constrained to hold that the growing wheat attached in this case was subject to levy, and to affirm the judgment.

2. Growing crops— attachment.

All the Justices concurring.