[No. 3055.  Decided June 21, 1899.]

## M. W. TIPTON et al., Respondents, v. W. M. MARTZELL et al., Appellants.

LEVY—WHAT PROPERTY SUBJECT—GROWING CROPS.

A growing crop planted by a tenant, under a contract with his landlord to properly care for and harvest the crop and deliver to the latter one-third of the product, is not subject to the levy of an execution.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge.  Affirmed.

*R. G. Blair,* for appellants:

A growing crop of grain, owned by and in the possession of a tenant, is subject to levy and sale on execution against him.  *Polley v. Johnson,* 23 L. R. A. 258; *Kingsley v. Holbrook,* 45 N. H. 313 (86 Am. Dec. 173); *Crine v. Tifts,* 65 Ga. 644; *Adams v. Tanner,* 5 Ala. 740; *Favorite v. Deardorff,* 84 Ind. 555; *McKenzie v. Lampley,* 31 Ala. 526; *Davis v. McFarlane,* 37 Cal. 634 (99 Am. Dec. 340); *Raventas v. Green,* 57 Cal. 254; *Ayers v. Hawk,* 11 Atl. 744; *Schell v. Simon,* 66 Cal. 264.

*Trimble & Pattison,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Upon a judgment in favor of appellant Martzell against respondents, appellant Sims, as sheriff, attempted to levy upon an immature growing crop of about

18—21 WASH.

240 acres of wheat, on the 10th of May, 1898. The wheat could not be ripe for harvest until September following. Respondents planted the crop of wheat under a contract with the owner of the land, by which they were to properly care for and harvest the crop and deliver to the owner one-third of all the grain harvested upon the premises. Respondents commenced this action to restrain appellants from selling the crop of grain. Appellants filed a general demurrer to the complaint, which was overruled, and they appealed from the order.

The question presented is whether the growing crop of wheat owned by the tenants under the terms stated is subject to levy and sale. It is maintained by counsel for appellants that, at common law, growing crops, the result of annual cultivation and labor,—*fructus industriales,* —are personal property, while those that are the natural and spontaneous growth of the land,—*fructus naturales,*— are realty; and a number of authorities are cited to sustain the proposition. The leading case cited by counsel is that of *Polley v. Johnson,* from the supreme court of Kansas, 23 L. R. A. 258 (52 Kan. 478, 35 Pac. 8). The Kansas statute (Gen. Stat. 1889, par. 2824), provided:

" The emblements or annual crops raised by labor, and whether severed or not from the land of the deceased at the time of his death, shall be assets in the hands of the executor or administrator, and shall be included in the inventory."

Paragraph 2825 provided:

" The executor or administrator, or the person to whom he may sell such emblements, may, at all reasonable times, enter upon the lands to cultivate, sever and gather the same."

Paragraph 5008, part of the procedure before justices of the peace, provides:

" In all cases where any lands may have been let, reserving rent in kind, and when the crops or emblements growing or grown thereon shall be levied on or attached by virtue of any execution, attachment or other process against the landlord or tenant, the interest of such landlord or tenant against whom such process was not issued, shall not be affected thereby; but the same may be sold, subject to the claim or interest of the landlord or tenant against whom such process did not issue."

The court observes that, while these sections do not reach the case, they show a recognition of what they regard as the settled doctrine of common law,—that such growing crops are personal property subject to sale on execution for the debts of the owner,—and determine the cause with the observation:

"However much we may disapprove of the policy of the law, we are constrained to hold that the growing wheat attached in this case was subject to levy."

Based upon the rule that at common law the growing crop passed to the administrator, many cases are found affirming the validity of such levy under an execution as upon personal property. In some of the states provision is made to extend the lien of the execution until an immature crop is ready for harvest, and in other states the levy upon a growing crop is permitted by statute. The only statute that has been called to our attention upon the subject of growing crops is § 1646, 1 Hill's Code, which authorizes a chattel mortgage upon them. An execution does not create a lien for an indefinite period, or any period beyond its life. Section 469, 2 Hill's Code, requires an execution to be returned within sixty days. In *Ellithorpe v. Reidesil,* 71 Iowa, 315 (32 N. W. 238), it was determined that an execution could not be levied upon immature growing crops. The court observed:

" The whole proceeding was on the theory that the crops were personal property, and could be levied on and sold

as such. But while they remained immature and were being nurtured by the soil, they were attached to and constituted part of the realty. They could no more be levied upon and sold on execution as personalty than could the trees growing upon the premises."

And a number of former decisions of the court are cited in support of its conclusion. It has been well observed that the value of the growing crop depends upon the soil for its nourishment and support, and, if disconnected at once, as in this case, would be nothing, and levy and sale usually offers but little return to the creditor, while it is: oftentimes serious loss to the debtor.

In *Penhallow v. Dwight,* 7 Mass. 34 (5 Am. Dec. 21),. an entry and levy upon a crop of corn fully ripe and fit to be gathered was sustained upon the ground that the crop was fully ripe and in a proper state to be gathered; but the court observed:

"An entry, for the purpose of taking unripe corn, or other produce which would yield nothing, but in fact be wasted and destroyed, by the very act of severing it from the soil, would not be protected by this decision."

But in the case at bar there was an existing contract between the landlord and the respondents that they would properly take care of the growing grain, and harvest and deliver one-third of the product to the landlord. In a contract of this nature the landlord depends on the character and skill of the lessee, and it would seem to be personal and not assignable. It was said by the supreme court of Michigan, in *Randall v. Chubb,* 46 Mich. 311 (9 N. W. 429, 41 Am. Rep. 165):

" The very nature and character of the lease or agreement shows that it was a personal one to the defendant, and could not be assigned by him to a third party without the consent of his lessor. The rent or share which the latter would receive must depend very much upon the character of the lessee, and the latter could not place a:

party in possession of the premises who might not be a good husbandman, and who might not be able to carry on the farm operations in a good, careful and proper manner. Under such a lease the landlord has a right to choose his tenant, and he may be willing to lease upon shares to one man, and yet be wholly unwilling to let another have possession upon any terms."

It is evident that, if a sale of the crop were permitted within the life of the execution, the agreement by which the landlord was entitled to have the lessees give their per-sonal care and attention to the growing crop would be abrogated, and the process would substitute the purchaser at execution sale as one of the parties to the lease. It may also be observed that, under our law, the administrator takes possession of the realty, and that the proceeds of its products may be used in payment of the debts of the de-ceased, as well as the proceeds from the realty.

We conclude that the crop, under the facts shown here, was not subject to the levy of the execution, and the judg-ment of the superior court is affirmed.

GORDON, C. J., and DUNBAR, ANDERS and FULLERTON, JJ., concur.