[No. 23313. Department One. December 11, 1931.]

WESLEY LLOYD, *Appellant,* v. M. A. WOODS *et al.,*
*Respondents.*[1]

*Louis A. Dyar,* for appellant.

*Grant S. Bond* and *M. A. Marquis,* for respondents
Woods *et al.*

*Rader & Bean,* for respondent Peoples State Bank.

BEELER, J.—The respondent, Whitman college, owns
certain farm lands in Walla Walla county, adapted to
growing wheat, and on December 9, 1927, leased the
same to the respondent M. A. Woods for a period of
five years. The lease provided for rent payable in crop
shares, two-fifths of the annual crops to the lessor and
three-fifths to the lessee. While the lease contained a
covenant prohibiting the lessee from assigning his in-
terest in the lease without the consent of the lessor, it
contained no provision *against assignment by opera-
tion of law.*

On October 30, 1930, the appellant commenced an
action against M. A. Woods and wife to recover on a

[1]Reported in 5 P. (2d) 1000.

promissory note, and on the same day levied an attachment upon "all the interest of the defendants" (M. A. Woods and wife) in and to the leased farm lands. At the same time, a notice of lis pendens was filed in the office of the county auditor of Walla Walla county. On November 15, 1930, Woods borrowed the sum of $15,-500 from the respondent, Peoples' State Bank, and to secure the same executed a chattel mortgage to the bank upon his interest in the *growing* crop, and upon certain livestock, farming equipment and machinery.

On December 1, 1930, the appellant recovered judgment on the note against Woods and wife for the sum of $3,366.80, including costs and attorney's fees. It was decreed in that judgment that the appellant, by his attachment, had obtained a lien on the interest of Woods and wife in all the lands attached. That judgment authorized the appellant to file and serve a supplemental complaint invoking equitable relief in aid of the attachment lien. In conformity therewith, the appellant, on January 3, 1931, filed his amended supplemental complaint praying that his lien on the premises and on the *growing* crop be adjudged superior to the lien claimed by the respondent, People's State Bank, and that the court appoint a receiver to collect the rentals. The prayer of the supplemental complaint was for general equitable relief.

The respondents Woods and wife, Mildred E. Woods, and the board of trustees of Whitman college, in their answer denied that the appellant by his attachment secured a lien on their interest in the lands described in the lease, and the college in its affirmative defense set up a copy of the lease and alleged that it entered into the lease with the respondent M. A. Woods, relying upon his knowledge, skill and industry as a farmer, and that the lease was a personal one and

hence not assignable by operation of law. The respondent, Peoples' State Bank, in its answer denied that the appellant had a lien upon the growing crops, and alleged that, even if it had a lien, the same was subsequent and junior to its rights under the chattel mortgage. Upon these issues, the cause was tried to the court sitting without a jury, resulting in a holding that the appellant, under the attachment, acquired no interest or lien upon the *growing* crop. The trial court dismissed appellant's action, and this appeal followed.

In *Tipton v. Martzell*, 21 Wash. 273, 57 Pac. 806, 75 Am. St. 838, we held that a *growing* or *immature* crop planted by a tenant, under a contract with his landlord to properly care for and harvest the crop and deliver to the latter one-third of the product, could not be levied upon and was not subject to sale on execution. We there said:

"But in the case at bar there was an existing contract between the landlord and the respondents that they would properly take care of the growing grain, and harvest and deliver one-third of the product to the landlord. In a contract of this nature the landlord depends on the character and skill of the lessee, and it would seem to be personal and not assignable. . . .

"It is evident that, if a sale of the crop were permitted within the life of the execution, the agreement by which the landlord was entitled to have the lessees give their personal care and attention to the growing crop would be abrogated, and the process would substitute the purchaser at execution sale as one of the parties to the lease."

The holding in the *Tipton* case, *supra,* is determinative of the question here under consideration. The lease in its essential provisions is akin to a cropper's contract, and the authorities generally hold that such a contract is personal in its nature and not assignable. See Note, 64 A. L. R., p. 1418. The lease contains no

present demise of any interest in the realty, but merely grants the right to the lessee to occupy and use the leased premises for a limited and qualified purpose, to wit, the raising of crops during certain seasons, and stresses the personal character of the services required of the tenant. It contains, also, a condition against assignment, the purpose of which undoubtedly was to guard against the tenant substituting for himself some one who was not a prudent and experienced farmer. One of the reasons why the board of trustees of Whitman college purchased the farm lands was because they were able to obtain the services of Woods, a seasoned and experienced farmer, to till and cultivate the same. The secretary of the board of trustees testified:

"One of the reasons for our buying this place was that we could get Mr. Woods as a farmer on the place, so we invested this money in the place knowing that we would have a first class farmer."

The underlying reason for the rule that a contract or lease of this nature is not assignable, is tersely and ably stated by the trial court:

"There are certain questions of policy in the farming of lands, as to whether to do or not to do a given thing, or if to do it then when to do it that are of great importance in and as to the results obtained in carrying on the farming operations. The question as to when to seed and the question as to whether to harrow or not to harrow a growing crop; and if to harrow, then when to harrow, are the kind of questions that must be decided by a farmer of considerable experience, and experience in the immediate neighborhood, and on the same kind of land; and the court believes that under no circumstances should any one else be allowed to be substituted for the tenant elected by the landlord, where his compensation for the use of his land depends upon the amount and quality of the crops produced."

One of the early cases to announce the rule that a lease on shares is a personal contract and not assignable, was that of *Randall v. Chubb,* 46 Mich. 311, 9 N. W. 429, 41 Am. Rep. 165. There the owner entered into a lease whereby the tenant was to do all the work, furnish the seed and deliver one-third of the crops to the lessor. The lessee, without permission, undertook to assign the lease. Thereupon, the lessor instituted proceedings to recover possession of the premises. The court there said:

"The very nature and character of the lease or agreement shows that it was a personal one to the defendant, and could not be assigned by him to a third party without the consent of his lessor. The rent or share which the latter would receive, must depend very much upon the character of the lessee, and the latter could not place a party in possession of the premises, who might not be a good husbandman, and who might not be able to carry on the farm operations in a good, careful, and proper manner. Under such a lease the landlord has a right to choose his tenant, and he may be willing to lease upon shares to one man, and yet be wholly unwilling to let another have possession upon any terms. So with reference to the use of his farm implements, one might be a careful, prudent man, who would take good care of them, while another more reckless would not by the owner be permitted to use them upon any terms. The attempt to assign this lease and put another in possession thereunder worked a forfeiture thereof, and enabled the lessor to take immediate steps to regain possession."

The lease in the *Randall* case, *supra,* apparently contained no covenant prohibiting the lessee from making an assignment. Notwithstanding the absence of such a clause, the Michigan court held that the contract or lease was a personal one and could not be assigned without the consent of the lessor. True, the question there involved was one of a voluntary assignment,

whereas here the question is one of involuntary assignment. But if the landlord can not be compelled to take a stranger as a tenant under a voluntary assignment, as was held in the *Randall* case, *supra,* neither should the landlord be forced by involuntary assignment, that is, by operation of law, to accept a stranger as a tenant, even though the lease contains no restriction against transfer by operation of law. This rule was recognized in the *Tipton* case, *supra.*

The decisions are not harmonious on the question whether *growing* crops can be levied on and sold. Some courts hold that the lessor and lessee are tenants in common of the growing crops, others, that growing crops must be regarded as part of the realty, while still others turn upon the nature of the agreement between the lessor and his tenant. This diversity of opinion is pointed out in Freeman on Executions (3d ed.), § 113:

"In some of the states, acting, doubtless, upon the assumption that, until they are in a condition to become a subject of commerce, they must be regarded as part of the realty on which they are growing and from which they cannot be severed without their destruction, or, at least, their diminution in value, it has been held that it is only when they have been reaped, or are fit to be severed from the soil, that they can be deemed personal property, and subject to levy and sale as such."

In support of the foregoing statement, the author cites *Ellithorpe v. Reidesil,* 71 Iowa 315, 32 N. W. 238; *Burleigh v. Piper,* 51 Iowa 649, 2 N. W. 520; *Penhallow v. Dwight,* 7 Mass. 34. In the *Ellithorpe* case, *supra,* the rule is laid down in the following language:

"At the time of the levy and sale, the crops were all immature, some of them having been planted but a short time before the levy. . . . The whole proceeding was on the theory that the crops were personal

property, and could be levied on and sold as such. But while they remained immature, and were being nurtured by the soil, they were attached to and constituted a part of the realty. They could no more be levied upon and sold on execution as personalty than could the trees growing upon the premises.''

We are of the opinion that the lease or contract in question did not vest in the tenant any personal estate in the realty, as such, which was subject to seizure and sale under legal process over the objection of the lessor; and that the contract or lease between the parties contemplated the rendition of services on the part of the tenant, Woods, so personal in their nature as to render the lease immune from involuntary assignment. Furthermore, since the appellant by his attachment obtained no valid lien on the growing crop, the rights of the respondent, Peoples' State Bank, under its chattel mortgage, are superior to the rights of the appellant to the crop.

Judgment affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.