No. 20,262.

Thomas J. Myers, *Appellant,* v. Hampton Steele and W. F. Wharton, *Appellees.*

### SYLLABUS BY THE COURT.

Sale—*Matured Crops—Title Passed as Against Grantee Under Sheriff's Deed.* A sale made by the lawful occupant of land which had been sold on execution of a crop of corn which he had grown thereon passes a good title as against the grantee under the sheriff's deed, provided that at the expiration of the period allowed for redemption it is ripe in the sense that it has ceased to draw sustenance from the soil, notwithstanding it is not then fit to husk and put in a crib, or to market.

Appeal from Shawnee district court, division No. 2; George H. Whitcomb, judge. Opinion filed July 8, 1916. Affirmed.

*Hiram C. Root,* of Topeka, for the appellant.
*Robert H. Steele,* and *A. N. Alt,* both of Topeka, for the appellees.

The opinion of the court was delivered by

Mason, J.: Thomas J. Myers purchased a tract of land at sheriff's sale, made under a decree foreclosing a mortgage, the eighteen months allowed for redemption expiring August 24, 1914. A tenant of the mortgagor planted a part of it to corn about May 10, 1914. About August 20, 1914, the tenant undertook to sell the corn crop to Hampton Steele and W. F. Wharton, who paid him for it. Myers received a deed September 8, 1914. In November, 1914, Steele and Wharton gathered all the crop except a few loads which they had hauled off about August 20. Myers brought action against them for the value of the corn. A verdict was returned against him, on which judgment was rendered. He appeals.

Among other findings made in response to special questions were the following:

"What was the condition of this corn August 25, 1914, as to whether it was ripe or green at that time? Ripe.

"Had said corn ceased to grow and to draw sustenance from the land prior to August 24th, 1914? Yes.

37—98 Kan.

"When was this corn ripe and fit to husk and put in a crib? October 1st to October 10th, 1914.

"When and at what time was the corn fit and in a condition to gather to be put in a crib and sell upon the market? October 1st to October 10th, 1914."

The court instructed the jury in substance that the crop belonged to the purchaser at the sheriff's sale only in case it was still drawing sustenance from the soil at the time the period of redemption expired. The plaintiff complains of this instruction and contends that the true test (which he asked to have incorporated in the charge) is whether the crop at the date named was "wholly ripe and matured and ready to gather and either put in a crib or sell on the market."

Whether an annual crop is to be regarded as so far a part of the realty that it will pass by an ordinary deed unless reserved is often made to depend expressly upon whether there has been a physical severance from the soil, irrespective of the question of maturity. In a typical case it was said:

"It is true that the authorities in alluding to this subject very generally use the words *growing* crops, as those embraced by a conveyance of the land, but this expression appears to have been commonly employed to distinguish crops still attached to the ground, rather than to mark any distinction between *ripe and unripe crops*. . . . Whether the crop of the seller of the farm goes with the land to the purchaser of the latter, when there is no reservation or exception, depends upon whether the crop is at the time attached to the soil, and not upon its condition as to maturity." (*Tripp v. Hasceig*, 20 Mich. 254, 260, 261.)

The rule in relation to voluntary conveyances is usually applied to those founded on a judicial sale, although a distinction is sometimes made (*Aldrich v. Bank of Ohiowa*, 64 Neb. 276, 89 N. W. 772), based upon the practice of appraisement, which might also be supported by considerations of public policy and perhaps by the rule of interpreting a deed more strongly against the grantor. The view that in such a situation as that here presented the maturity of the crop should be the controlling consideration, with the reasons for it, has been thus expressed:

"The grain being mature, the course of vegetation has ceased and the soil is no longer necessary for its existence. The connection between the grain and the ground has changed. The grain no longer demands nurture from the soil; the ground now performs no other office than affording a

Myers v. Steele.

resting place for the grain—it has the same relations to the grain that the warehouse has to the threshed grain or the field has to the stacks of grain thereon. It will not be denied that when the grain is cut it ceases to be a part of the realty. The act of cutting, it is true, appears to sever the straw from the land. But it is demanded by the condition of the grain. It is no longer growing; it is no longer living blades which require the nourishment of the soil for its existence and development. It is changed in its nature from growing blades of barley or oats to grain mature and ready for the reaper. Now the mature grain is not regarded by the law like the growing blades, as a part of the realty, but as grain in a condition of separation from the soil." (*Hecht v. Dettman*, 56 Iowa, 679, 680, 10 N. W. 241.)

This view has been definitely adopted by this court, its latest expression on the subject being in these words:

"It has been clearly settled in this state that a conveyance of land, either by voluntary deed or judicial sale, without reservation, carries all growing crops with the title to the land. This rule only applies to crops which are immature and have not ceased to draw nutriment from the soil at the time of sale, and is not applicable to crops that are ripe and ready for harvest. This distinction has been carefully recognized in all the cases where the subject was considered. [Citing cases.] When the crops mature they can no longer be regarded as a part of the realty, and hence do not pass to the purchaser of the land. As the ripened crop possesses the character of personalty, the fact that it rests upon the land, unsevered, is of little consequence. If the severance of such a crop was at all material, it had in legal effect been severed through the sale by Tuthill to the plaintiff. The mortgage or sale of a ripened crop at least operates as a constructive severance of the same from the land." (*National Bank v. Beegle*, 52 Kan. 709, 711, 35 Pac. 814.)

The reasons given for preferring the test of maturity to that of severance clearly suggest the corollary that a crop should be regarded as mature in this sense whenever it has ceased to draw sustenance from the soil, notwithstanding it may require seasoning before it is ready to be stored or marketed, and therefore may conveniently and advantageously be left standing for a time. The instruction of the trial court adopted this theory, and is approved. The conclusion reached is in full accord with the spirit of the redemption law, which undertakes to secure to the owner of the equity the absolute enjoyment of all benefits of the property for eighteen months after the sale.

The plaintiff also contends that there was no evidence that the crop was mature at the date of the expiration of the redemption period, and that the findings quoted are inconsistent

with each other. There was testimony that owing to the dryness of the season the corn had by the 24th of August ceased to draw sustenance from the ground. By naming the 1st of October in answer to the question requiring them to state when the crop was ripe and fit to husk and put in a crib the jury did not assert that it was not fully mature, in the sense indicated, in August.

The judgment is affirmed.