No. 24,243.

D. E. PETERSON, as Administrator, etc., *Appellant*, v. T. S. HONAKER, *Appellee*.

SYLLABUS BY THE COURT.

SHERIFF'S DEED—*Not Affected by Parol Contract Relating to Crops on Land— Crops are Personal Property.* A sheriff's deed issued as the result of negotiations between tenants in common of land for the sale of the land from one to the other is not added to, altered, varied, or contradicted by evidence of a parol contract by which all the crops growing or standing on the land at the time of the negotiations are transferred to the purchaser.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed December 8, 1923. Affirmed.

*E. D. Mikesell,* and *A. A. Nattier,* both of Fredonia, for the appellant.
*W. H. Edmundson,* of Fredonia, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover rent for real property. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The case was tried by the court without a jury, and special findings of fact and conclusions of law were made, as follows:

"1. This action was brought originally by Ruby A. Peterson against the defendant to recover rents of 1917 on one hundred and one acres of the southwest quarter of section thirty (30) and the north half of the northwest quarter of section thirty-one (31), township twenty-eight (28) of range seventeen (17) east, in Wilson County, Kansas, consisting in all of 170 acres.

"2. On the 3rd day of 'September, 1920, D. E. Peterson was by the Probate Court of Guthrie County, Iowa, appointed administrator of the estate of Ruby A. Peterson, Ruby A. Peterson having died on the 1st day of September, 1920, and the said D. E. Peterson after his said appointment qualified as such administrator in accordance with the law of the state of Iowa.

"On the 7th day of September, 1920, the same being one of the days of the regular September, 1920, term of the District Court of Wilson County, Kansas, the said D. E. Peterson, administrator aforesaid, made application to the District Court of Wilson County, Kansas, to have the action revived in his name as administrator. The court, after hearing said application and the evidence pertaining thereto, revived said cause of action in the name of D. E. Peterson, administrator, who· is plaintiff herein.

"3. From the 23rd day of July, 1913, to the 7th day of August, 1917, Ruby A. Peterson, deceased, and her brother, V. S. Whistler, were joint owners of the land described herein.

"4. On the '7th day of August, 1916, the said V. S. Whistler sold his un-

divided one-half interest in and to said land to T. S. Honaker, defendant herein, who thereby became joint owner of said lands with the plaintiff, Ruby A. Peterson, deceased.

"5. On the 30th day of March, 1917, T. S. Honaker, defendant herein, filed a petition in the District Court of Wilson County, Kansas, for partition of the property herein described. At the time said petition was filed T. S. Honaker and Ruby A. Peterson were joint owners of said property, each owning an undivided one-half interest therein. Ruby A. Peterson filed answer in said action, and on the 28th day of April, 1917, said premises were ordered partitioned and commissioners appointed by the court to appraise said property.

"6. That after judgment in partition was had Ruby A. Peterson sold her interest in said premises to T. S. Honaker for an agreed price, including all crops then growing on said premises, and pursuant thereto a warranty deed was executed and brought to Wilson County, Kansas, for delivery on or about the 12th day of June, 1917.

"7. After the agreement for purchase was made between T. S. Honaker and Ruby A. Peterson, Honaker made application to the Union Central Life Insurance Company for a loan on said premises described herein for money to be applied on the purchase thereof. The loan company raised a question as to the merchantability of the title to said land, contending that Ruby A. Peterson not being 21 years of age, her deed was not good because of a certain provision of the statutes of the state of Kansas at that time affecting the minority of females in that state.

"8. On or about the 13th day of June, 1920 [1917], at the Bank of Altoona, in said Wilson County, because of the question raised by said company as to said title, parties to this action made an agreement that the partition suit then pending in the District Court of said county should be proceeded with, property to be appraised and sold in said action and a sheriff's deed be thereby obtained for said property. It was agreed that said property should be appraised at $9,200; that T. S. Honaker should take said property at the appraised value and pay $4,600 for Ruby A. Peterson's share of interest in said property. All of the terms of the old agreement were renewed so far as they were applicable. The only change in said contract was as to the transfer of said property from a warranty deed by Ruby A. Peterson to a deed to be ordered by the court in the partition proceeding.

"9. Pursuant to said agreement, the partition action was reopened, the same commissioners were appointed to appraise the property and a deed in partition was issued and delivered by the sheriff of Wilson County, Kansas, on the 24th day of September, 1917, to the defendant herein, T. S. Honaker, and the $4,600 was duly paid to Ruby A. Peterson for her share in said lands.

"10. The agreement under which T. S. Honaker paid the $4,600 into court for the use and benefit of Ruby A. Peterson, and which she received as above indicated was paid under the contract between the parties preceding the execution of the deed which Ruby A. Peterson brought from Iowa to Kansas on the 12th day of June, 1917; that is, the deal made on the proposition made to J. L. Stryker, attorney, who represented Ruby A. Peterson, by W. H. Edmundson, attorney, who represented T. S. Honaker, in which T. S. Honaker was to pay $4,600 in full settlement of everything.

"11. The defendant T. S. Honaker had been in possession of said premises as tenant prior to the time that he purchased the interest of V. S. Whistler and was in possession of said premises as tenant when he made the agreement to purchase said property from Ruby A. Peterson which was finally carried out and consummated through the partition suit resulting in a sheriff's deed to Honaker; that is, T. S. Honaker had leased the premises for 1917 and was obligated to pay rentals for that year to Ruby A. Peterson if it had not been for the purchase he made of said property.

"12. During the year 1917 T. S. Honaker cultivated said premises, harvested said crops as they matured on said premises, disposing of said crops as he saw fit, and received in crops from said premises the wheat, corn and other crops described in the plaintiff's petition herein. During all of the time of the harvesting of said crops the plaintiff herein, who well knew of the same, made no interference, no demand and no suggestion that he would claim said rents, and made no demand for rents until some time in June, 1918, a full year from the time said contract was made for the sale of said property and many months after the sheriff's deed was delivered to Honaker and the purchase price paid to Ruby A. Peterson.

"13. The court further finds that the contract accepted by J. L. Stryker, representing Ruby A. Peterson, for the sale of said land, and the terms and conditions of that contract and the agreement of June 13, 1917, have been fully performed by all of the parties thereto.

"CONCLUSIONS OF LAW.

"1. The plaintiff cannot recover. Defendant should have judgment for costs."

There was evidence to sustain each of the findings of fact.

Two matters concerning the introduction of evidence are presented by the plaintiff. Both involve the same legal proposition. The first is that "the court admitted the testimony of J. L. Stryker who was, at the time of the origin of the facts concerning which he testified, attorney for Ruby A. Peterson, and W. H. Edmundson, who at the time was attorney for T. S. Honaker, to testify as to what was said and the details and terms of the transaction in which it was first agreed that Ruby A. Peterson should sell her undivided one-half interest in the property in controversy to T. S. Honaker." The second is that "the court erred in admitting the testimony of Mr. Edmundson, Mr. Honaker, Mrs. Honaker, and C. N. Converse as to what was said in the Altoona conference to the effect that the crops was to pass under the deed that might be obtained under the writ in. partition."

The sheriff's deed was the result of negotiations between the plaintiff and the defendant for a sale of the land by the former to the latter. That deed cannot be added to, altered, or varied—except

for fraud, accident, or mistake—by evidence of what was said during the negotiations which resulted in the deed. The deed conveyed the land and all that was a part of it. If the crops passed under the contract, the evidence complained of was competent.

In *Mabry v. Harp,* 53 Kan. 398, 36 Pac. 743, it was said that—

"Annual crops, like wheat, which are the product of industry and care, sown by the owner of the soil or his tenant, while growing and immature, are personal property."

We quote from the opinion in that case as follows:

"In 1 Freeman on Executions, § 113, it is said: 'Crops, whether growing or standing in the field ready to be harvested, are, when produced by annual cultivation, no part of the realty; they are, therefore, liable to voluntary transfer as chattels. It is equally well settled that they may be assigned and sold under execution.' In *Caldwell v. Custard,* 7 Kas. 303, it was said that 'growing crops are personal estate.' It was said in *Polley v. Johnson,* 52 Kas. 478, that 'annual crops which are the product of industry and care, sown by the owner of the soil, are, while growing and immature, personal property.' In *Bellows v. Wells,* 36 Vt. 599 it was held that 'a lessee might convey to his lessor all the crops which might be grown on the leased land during the term, and no delivery of the crops after they were harvested was necessary, even as against attaching creditors.' See *Hull v. Hull,* 13 Reporter, 362." (p. 399.)

See, also, *McClain v. Miller,* 95 Kan. 794, 796, 149 Pac. 399; *Myers v. Steele,* 98 Kan. 577, 158 Pac. 660; *Dannefer v. Aurand,* 106 Kan. 605, 189 Pac. 371.

In the last case cited, this court said:

"It is not necessary to a valid sale of the crop that it should be reserved in the deed of conveyance. An effectual reservation may be made by parol, whether the crop of wheat is growing or matured." (p. 608.)

*Dannefer v. Aurand,* supra, establishes that it was not necessary to say anything in the sheriff's deed concerning the crops then standing or growing on the land. The contract transferred the crops and did not add to, alter, vary, or contradict the terms of the sheriff's deed.

The defendant contends that the court erred in its findings of fact and in its conclusions of law, and argues that by reason of having admitted incompetent testimony, the erroneous conclusions of fact and of law were reached. This contention is without foundation because the evidence concerning which complaint is made and on which the contention is based was competent.

The judgment is affirmed.