No. 27,204.

The C. C. Isely Lumber Company, *Appellee,* v. J. C. Kitch and Mary Kitch, *Defendants;* J. C. Kitch, *Appellant.*

SYLLABUS BY THE COURT.

1. Homesteads—*Exemptions—Growing Crops.* Immature annual crops growing on a homestead are exempt from sale on execution against the homestead owner.

2. Executions — *Property Subject to Execution — Growing Crops.* Annual crops, which are the product of industry and care, are not, while growing and immature, such personal property as subjects them to attachment and sale on execution. (*Polley v. Johnson,* 52 Kan. 478, 35 Pac. 8, overruled.)

Appeal from Gray district court; Karl Miller, judge. Opinion filed May 7, 1927. Reversed.

*Fred J. Evans* and *Ray H. Calihan,* both of Garden City, for the appellant.
*Lester Luther,* of Cimarron, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The action is one to restrain the defendants from plowing, cultivating, tearing up, destroying, or pasturing a crop of growing wheat on certain lands in Gray county. A temporary restraining order was issued, and after a hearing on a motion to dissolve the temporary restraining order, the court made findings of fact, on which it was ordered—

"That the defendant J. C. Kitch be and he is hereby enjoined pending final trial hereof from plowing up, cultivating, pasturing, tearing up, destroying or interfering with the plaintiff's ownership and possession of an undivided two-thirds interest in approximately 140 acres of growing wheat located on NW¼ of Sec. 8, Twp. 26, Rge. 30, and three-fourths interest in approximately 160 acres of growing wheat located on W½ of Sec. 29, Twp. 26, Rge. 30, Gray county, Kansas, until such time as same shall become ripe and shall be harvested."

The action was dismissed as to Mary Kitch. J. C. Kitch appeals. The findings of fact made by the court were as follows:

"1. On November 11, 1919, the plaintiff recovered in this court a judgment against the defendant J. C. Kitch for the sum of $418.09, and costs of suit, the judgment to bear interest at the rate of 10 per cent per annum from said date. Said judgment was in full force and effect on December 17, 1925.

"2. On December 17, 1925, the plaintiff caused an execution to issue on

Crops, 32 L. R. A. n. s. 577; 8 R. C. L. 358. Executions, 23 C. J. p. 329 n. 62. Homesteads, 29 C. J. pp. 782 n. 12, 834 n. 95, 96, 835 n. 2.

said judgment to the sheriff of Gray county, Kansas; the sheriff levied the same on said date upon 'Two-thirds interest in all wheat growing on northwest quarter of section 8, township 26, range 30, containing 140 acres, more or less. Also three-fourths interest in all growing wheat on west half of section 29, township 26, range 30 Gray county, Kansas;' and caused same to be appraised. The wheat on the northwest quarter of section 8 so levied upon was appraised at $300, and the wheat so levied upon in section 29 was appraised at $300.

"3. On the aforesaid date the northwest quarter of section 8 was the homestead of the defendants, occupied and used as the family residence, the title to which was in the defendant J. C. Kitch; there was then growing on said premises about 140 acres of wheat which had been sowed the previous fall, but which would not mature until about the last of June or first of July, 1926; this wheat had been sowed by the defendant J. C. Kitch and his wife, for the use of the family, but the management of the crop and the disposal of it would be handled by the defendant J. C. Kitch, the head of the family.

"4. On the aforesaid date the defendant J. C. Kitch held under lease the west half of section 29, upon which was then growing about 160 acres of wheat; this wheat had been sowed by the defendant J. C. Kitch in the fall of 1925, but would not mature until about the last of June or first of July, 1926. The defendant J. C. Kitch paid cash rent for said premises, and his lease on said premises would not expire until after the time of the maturity of the aforesaid growing wheat.

"4. On January 7, 1926, the sheriff of Gray county caused to be published in a local newspaper his notice of sheriff's sale of the growing wheat so levied upon, fixing the time of such sale on 'Monday, January 18, 1926, between the hours of 10 o'clock a. m. and 2 o'clock p. m. of said day.' Said notice was published for two consecutive weeks, and proof of such publication was made and filed in said cause on January 19, 1926. Reference to said publication and proof of publication on file in this cause is hereby referred to and by such reference made a part of this finding.

"5. On the 18th day of January, 1926, the sheriff and one William Farr, general manager of the plaintiff at Cimarron, and Lester Luther, the plaintiff's attorney, went to the premises of the defendant on the northwest quarter of section 8, where the wheat was growing. The sheriff read the notice of sale and called for bids and William Farr bid the sum of $100; he was the only bidder and the wheat on the northwest quarter was knocked off to plaintiff; the party then went to the field of wheat on the west half of section 29, where the same procedure was followed and the wheat on that land was knocked off to plaintiff on the bid of William Farr of $100. William Farr did not state to the sheriff that he was making said bids in behalf of the plaintiff, but in fact intended to make said bids for and in behalf of the plaintiff; and the sheriff so understood it and made his return accordingly. The sheriff's return on the execution is made a part of this finding by reference.

"6. At the time of the sale, and at the times of the issuance of the execution, there were unpaid costs in the action in which the execution was issued in the amount of $64.40, due and owing to various persons. The costs accruing upon the execution including the costs of sale have never been paid.

Isely Lumber Co. v. Kitch.

"7. Neither William Farr, nor the plaintiff, the C. C. Isely Lumber Company, nor any other person have ever paid any sum on the aforesaid bids to the sheriff, or to the clerk of the court, or any other person, and have never paid any part of the costs unpaid at the time of the issuance of said execution, nor the costs accruing upon said execution, or the costs of said sales. The sheriff's return on the execution was copied by the clerk of the court in the execution docket, but otherwise no credit has ever been entered of record upon the judgment docket or upon any other court record of the proceeds of said execution sales.

"8. The plaintiff claims the right to the use of the land upon which said wheat is growing to mature the same, and the right to go upon said premises at harvest time and harvest and carry away and dispose of for its own use and benefit a two-thirds share of the wheat that shall ripen and mature on the northwest quarter of section 8, and a three-fourths share of the wheat that shall ripen and mature on the west half of section 29.

"9. At and prior to the commencement of this action by the plaintiff the defendants intended to pasture said growing wheat and would have done so except for the issuance of the injunction order in this cause, and also intended to plow up a portion of said fields with the purpose to plant such portions to other crops and would have done so except for the aforesaid injunction order.

"10. Since the said execution sales the defendant J. C. Kitch to preserve and protect the said wheat from blowing out has scattered straw over a portion of the fields where said wheat is growing. The defendant denies the right of the plaintiff to the use of the land for the purpose of maturing said crops, and claims that if the purchaser secured any property by virtue of such execution purchase it was only such crop as was then on said land and in the condition it then was in; the defendants also deny that there was any valid sale of any property under said execution, and that plaintiff at the time of the commencement of this action had or owned no right, title or interest in said growing crops or any part thereof.

"11. Since the execution sales the plaintiff has had one of the neighbors in the vicinity of the land watch the crop of wheat and report the condition of same from time to time, and also to report whether stock at any time should trespass upon the same; and has made preparation to harvest the crop, intending to take possession of the entire crop at harvest time and render to the owner or owners the one-third and one-fourth shares respectively. It was the belief of the plaintiff at the time of the levy of said execution that a one-third share of the wheat on the northwest quarter of section 8 belonged as rent to Mary Kitch, and that a one-fourth share of the wheat on the land in section 29 belonged as rent to the owner of said land.

"12. Since the execution sales the defendants have claimed to own all the said growing wheat, have looked after the wheat to the extent of protecting it from other people's stock, and in protecting the crop from injury from winds by scattering straw as aforesaid, and by keeping advised as to the condition of the crop from time to time."

1. Part of the wheat sold was on the homestead of the defendant. Under section 9 of article 15 of the constitution of this state and

section 60-3501 of the Revised Statutes, "a homestead to the extent of one hundred and sixty acres of farming land . . . shall be exempted from forced sale under any process of law." The purpose of the homestead exemption is to provide a place in which a debtor and his family may live and to provide a place on which he can raise food for his family without interference by creditors. If crops sown by the occupant of a homestead be levied on and sold while they are growing, one of the purposes of the homestead exemption will be defeated.

In 29 C. J. 834, 835, it is said:

"While there is authority to the contrary, it is very generally held that rents and profits arising from the homestead estate, so long as it retains its character as such, are exempt; but the general rule has not been applied to rents from a business homestead . . .

"The exemption extends to crops growing upon the homestead premises, and according to some decisions to crops which have been severed therefrom; but other decisions hold that the crops are exempt only so long as they are not severed from the soil. Underlying strata of coal are a part of the homestead and as such exempt."

In 8 R. C. L. 358 it is said:

"Crops growing on a homestead but not severed from the soil are a part of the homestead and exempt from execution against the homesteader, for to deny to a homestead claimant exemption of the crops raised on the homestead property would be injurious to the public, as tending to discourage good husbandry and the general improvement of the land set apart as a homestead, and would render the benefit intended to be secured to the head of the family for the support of those dependent on him, in many instances, utterly vain and illusory."

The crops growing on the homestead were exempt.

2. A more serious question arises out of the sale of that part of the wheat which was not on the homestead. The right of the owner of a growing crop, whether as landlord or tenant, to sell it or mortgage it, has been continuously recognized in this state from its organization to the present time; but under such circumstances the transfer of the crop is voluntary on the part of the owner and must be distinguished from the transfer of the same kind of a crop by a proceeding *in invitum*.

In *Polley v. Johnson*, 52 Kan. 478, 35 Pac. 8, this court, following rules of common law, said:

"Annual crops which are the product of industry and care, sown by the owner of the soil, are, while growing and immature, personal property, subject to attachment and sale for the debts of the owner."

The court declines to follow the principle there declared, and the case is overruled.

Section 77-109 of the Revised Statutes, in part, reads:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state."

The sale of a crop of growing wheat in the month of January, after it has been planted, involves much loss to him who planted it, because it cannot be then known that a crop will be produced. For this reason, it cannot be sold at anywhere near its value. What value it has is speculative. A sale on execution in January of such a crop will not produce more than enough to pay for the seed that had been used in planting it. It is not a kind of property that can be advantageously sold for the purpose of realizing funds with which to satisfy an execution.

This state has been very liberal in placing property of debtors beyond the reach of creditors. That liberality was first written into the constitution of the state, has been followed by the legislature, and has been upheld by the courts. The principle of the common law that a growing crop can be sold on execution to satisfy the claims of a creditor is not suited to the conditions and wants of the people of this state.

Section 61-1220 of the Revised Statutes should be noticed. It reads:

"In all cases where any lands may have been let, reserving rent in kind, and when the crops or emblements growing or grown thereon shall be levied on or attached by virtue of any execution, attachment or other process against the landlord or tenant, the interest of such landlord or tenant against whom such process was not issued shall not be affected thereby; but the same may be sold, subject to the claim or interest of the landlord or tenant against whom such process did not issue."

The statute is confined in its operation to the conditions therein named. It does not go further than to define the rights of the landlord or the tenant when the interest in the growing crop of the other is sold on execution. It does not declare that growing crops may be sold on execution.

Personal property sold on execution should be delivered to the purchaser at the time of the sale. Growing wheat sold in January cannot be then delivered to the purchaser. It must remain in the ground until harvest time, when it can be cut and removed. It must

receive its sustenance from the soil. The right to receive that sustenance must be sold under the execution if the growing wheat is sold. Because the wheat cannot be delivered at the time of the sale, it should not be sold on execution.

This principle was followed in *Ellithorpe v. Reidesil et al.,* 71 Ia. 315, 317, where the court said:

"The whole proceeding was on the theory that the crops were personal property, and could be levied on and sold as such. But while they remained immature, and were being nurtured by the soil, they were attached to and constituted part of the realty. They could no more be levied upon and sold on execution as personalty than could the trees growing upon the premises. This doctrine is elementary, and it has frequently been declared by this court."

The growing wheat could not be sold on execution. No injunction should have been granted.

The judgment is reversed.

JOHNSTON, C. J., dissenting.

MARSHALL, J., dissents from the second paragraph of the syllabus and the corresponding portion of the opinion. At common law, growing crops have been considered personal property. That principle has been followed in this state in a number of cases and was followed in *Polley v. Johnson,* 52 Kan. 478, 35 Pac. 8, where it was held that such crops could be sold on execution. That case is supported by the weight of authority in the United States. The present case comes within the provisions of section 61-1220 of the Revised Statutes, which recognizes the rule of common law that growing crops may be sold on execution.