No. 27,641.

SOEKO O. SOEKEN, *Appellant*, v. ANTON HARTWIG, *Appellee*.

(261 Pac. 590.)

SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER — *Right to Growing Crops — Reservation by Parol.*
It may be shown by parol evidence that annual crops, such as wheat, while
growing and immature, were reserved by the vendor on a sale of land al-
though there may be no reservation in the written contract or deed.

2. SAME—*Right to Growing Crops—Reservation by Parol—Sufficiency of Evi-
dence.* The evidence in the case examined and held to be sufficient to sus-
tain the verdict and judgment to the effect that there was an oral reserva-
tion of the wheat crop at the time negotiations were concluded as to the sale
of the land.

Appeal from Ellsworth district court; DALLAS GROVER, judge. Opinion filed
December 10, 1927. Affirmed.

*Ira E. Lloyd, N. F. Nourse,* both of Ellsworth, *William Osmond, Elrick C.
Cole* and *T. B. Kelley,* all of Great Bend, for the appellant.

*Samuel E. Bartlett* and *George D. Miner,* both of Ellsworth, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the purchaser of land to
recover from the vendor thereof the value of the wheat crop grown on
ninety-five acres of the land purchased, which was growing and im-
mature at the time of the purchase. No reservation of the crop was
made in the written contract or deed, but the vendor claims to have
made an oral reservation thereof prior to the execution of the con-
tract and deed. The answer alleged such oral reservation, and on
the trial the court admitted evidence as to it. The jury found for
the defendant, and specially found there was such oral reservation.
Plaintiff appeals, and states in his brief there are only these two
questions involved:

"First: Under the pleadings, stipulation and evidence was it competent for
appellee to show by oral testimony that he reserved the ninety-five acres of
immature and growing wheat?

"Second: Should the court hold such evidence competent, was there suffi-
cient evidence offered to establish such reservation?"

Crops, 17 C. J. pp. 379 n. 5, 381 n. 31; 23 L. R. A. n. s. 1218; L. R. A. 1917C
38; 8 R. C. L. 372. Evidence, 22 C. J. p. 1259 n. 88. Vendor and Purchaser, 39
Cyc. p. 2100 n. 58.

The appellant contends for the negative of both of these propositions upon the universally recognized doctrine so well expressed in *Guaranty Co. v. Grabske,* 111 Kan. 271, 207 Pac. 322, from which he quotes as follows:

"It is elementary that a written contract, in itself complete and free from ambiguity, cannot be altered or enlarged by showing prior or contemporaneous oral agreements where the writing purports to be a full expression of the agreement." (p. 272.)

This necessarily leads us first to the consideration of the statute of frauds, and next to the question of whether growing and immature crops are personal property or real property, for the statute of frauds referred to only relates to contracts "for the sale of lands, tenements, or hereditaments, or any interest in or concerning them," and requires that such contracts shall be in writing. (R. S. 33-106.) In the same connection reference is made to the case of *Isely Lumber Co. v. Kitch,* 123 Kan. 441, 256 Pac. 133, to show that such crops are a "part of the realty," and therefore come under the requirements of the statute of frauds. The second paragraph of the syllabus of that decision is as follows:

"Annual crops, which are the product of industry and care, are not, while growing and immature, such personal property as subjects them to attachment and sale on execution." (Syl. ¶ 2.)

It will be readily recognized by comparing this opinion with that of the case of *Polley v. Johnson,* 52 Kan. 478, 35 Pac. 8, to which direct reference is therein made, that the only question involved in these two cases was whether or not growing, immature crops are *such personal property* as subjects them to attachment and sale on execution, both opinions affirming and expressing the right of the owner to effect a sale of such crops as personal property. Both these questions as to the statute of frauds and the character of the property have been settled in this state.

"It is not necessary to a valid sale of a growing crop that it should have been reserved in the instrument of conveyance, as an effectual reservation of a growing crop may be made by parol." (*Dannefer v. Aurand,* 106 Kan. 605, syl. ¶ 4, 189 Pac. 371.)

"A sheriff's deed issued as the result of negotiations between tenants in common of land for the sale of the land from one to the other is not added to, altered, varied or contradicted by evidence of a parol contract by which all the crops growing or standing on the land at the time of the negotiations are transferred to the purchaser." (*Peterson, Administrator, v. Honaker,* 114 Kan. 752, syl., 220 Pac. 1025.)

"A member of the Prairie Band of Pottawatomie Indians can sell the corn growing on the land alloted to him by the government, and the contract of sale is not a contract touching the land or any interest therein." (*McClain v. Miller,* 95 Kan. 794, syl., 149 Pac. 399. See, also, *Myers v. Steele,* 98 Kan. 577, 158 Pac. 660.)

Cases are cited to show that if the oral agreement is not contemporaneous with but prior to the written agreement, the evidence of it is inadmissible, but the cases above cited refute that theory unless the period intervening shows the events to be entirely or naturally disconnected. Our attention is directed to two earlier· Kansas cases, where it was generally held that if the deed did not contain a reservation of the growing crops they would· go with the land, notwithstanding there was an oral reservation. One of those cases was decided on a demurrer to the amended petition, and the other was where a purchaser with oral reservation and deed in blank as to grantee, resold and inserted in the deed the name of his vendee without making any reservation—very unlike our case.

"It is a rule of common law that growing crops are personal property at common law, but they pass by conveyance as appurtenant to the land, unless severed by reservation or exception, and this rule has not been altered by the statute of frauds. It may be shown by parol that growing crops were reserved on a sale of land, although there may be no reservation in the deed." (8 R. C. L. 372.)

The jury in this case made the following special findings:

"1. On what date did the defendant receive the initial payment of $1,000 to be paid for the farm? A. June 5, 1926.

"2. At that time was the wheat crop on the said farm practically matured? A. On or about June 21, 1926.

"3. Were the terms of the sale agreed upon at the home of the defendant and before the defendant went to Ellinwood? A. Yes.

"4. At the time of the sale of the farm was it orally agreed by the parties that the wheat in controversy would be reserved to the defendant? A. Yes.

"5. On May 22, 1926, was there a crop of immature wheat growing on the premises? A. Yes."

There were only two witnesses as to the oral reservation, the vendor and the vendee, and their evidence was conflicting. The vendee said the crops were never mentioned during the negotiations except twice—once when he and the owner were looking over the place on his first visit there, when the owner said, "In another five or ten days it would be worth nothing," because it was already pretty badly burned, and the other time was when the purchaser made his offer for the place.

Soeken v. Hartwig.

"I asked him what he wanted for his crops. He said he didn't know. He asked me what I would give him, and I told him I would give him $14,000 provided he left the crop as it was."

On the other hand, the vendor testified the crop was mentioned during the negotiation on the first occasion, as follows:

"I told him I wouldn't sell it less than $14,500, and I was willing to give one-third of the crop. He said he would give me $14,000, offered me $14,000, and he wouldn't come up and I wouldn't come down. . . . There wasn't anything said about the crop then. Mr. Soeken went off."

On the second occasion:

"On Thursday, May 20, I saw the plaintiff at my place. I suppose between one and two o'clock. Mr. Soeken said he was going to—he wanted to buy the crop of wheat. I told him I wasn't going to sell the crop, I was going to hold it. . . . He said if you don't want to sell the crop, you keep it. He said if you sell your machinery and horses now you get quite a little more out of it. He said he would like to buy the crop, but I told him I wasn't going to sell it."

The vendor also says something was said by the purchaser about giving $15,000, with the crop, and that he ought to throw in the other two-thirds in wheat on the Kessler place (a farm rented by the vendor). These negotiations began at vendor's place in Ellsworth county on May 16 or 17, 1926. The second interview was at the same place on May 20, when an agreement was reached on $14,-000, of which amount $1,000 was to be cash and the balance in note. Two days later, May 22, vendor, pursuant to the arrangement of the 20th, went to Ellinwood, where vendee lived; and there a banker prepared a written agreement of sale and purchase, which both parties signed, and a deed, which was executed and acknowledged and left with the banker in escrow. Neither instrument made any reservation or mention of the wheat crop, but the agreement contained the following provision:

"It is further agreed between the parties to these presents that the party of the first part is to retain possession of said premises until the —— day of ——, 19——, when the same shall be delivered up to said party of the second part, upon his compliance with the agreements hereinbefore contained."

The court overruled motions to set aside three of the findings, to render judgment for plaintiff notwithstanding the verdict, and to grant a new trial, and thereafter approved the verdict and rendered judgment for defendant. We conclude that it was competent for the appellee to show by oral testimony that he reserved the immature and growing wheat, and that the evidence offered was admissible and sufficient to sustain the verdict and establish such reservation.

The court placed the burden of proof on the defendant to establish his defense of an oral reservation of the wheat crop, and instructed the jury that "if you find that there is evidence as to the reservation of the growing crops, a mere preponderance of the evidence is not sufficient, but the defendant must prove such reservation by clear and convincing evidence." We find no error in the fact that the court failed to explain and define the term "clear and convincing evidence" when the meaning of the word "preponderance" was explained and given.

The judgment is affirmed.