No. 29,383.

C. E. HAYHURST, *Appellant,* v. CHARLES SAILE, *Appellee.*

(288 Pac. 539.)

Opinion filed June 7, 1930.

*J. B. Wilson,* of Lawrence, for the appellant.

*C. C. Stewart,* of Lawrence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: C. E. Hayhurst brought this action to enforce a landlord's lien against Charles Saile, the purchaser of a crop grown by A. B. Cummings, a tenant on land of Hayhurst, and which had been sold when a part of the rental was unpaid. Judgment went for defendant, and plaintiff appealed.

Cummings, it appears, had owned the land for a number of years, and on June 20, 1925, a deed was executed by him and placed on record conveying the land to Hayhurst. A few days before that time Cummings had obtained a lease of the land from Hayhurst until March 1 of the following year at a rental of $1,500, but only a part of the rental has been paid. Cummings raised crops of corn, oats, clover seed and hay on the farm, and in February, 1926, sold to

Saile a quantity of hay and received payment therefor. At that time no mention was made as to a tenancy of Cummings, nor any question raised as to his right to sell the hay. Cummings testified that he made a payment upon the rent about that time, but was unable to say whether the money received from Saile was paid to Hayhurst on the rent. The principal question in the case was whether Saile had notice of the landlord's lien upon the crop. A recovery may, of course, be had by the landlord from the purchaser of a crop who purchased with notice of the lien. (R. S. 67-526.) As to the matter of notice, it was shown that Saile had known Cummings a long time and knew that he had owned and lived on the farm for five or six years, but the testimony was that he did not know the farm had been sold, and that he had never heard of Hayhurst. The only thing touching the matter of notice ever brought to his attention, either near or remote, was that he had heard a rumor that Cummings had traded off his land. This rumor came to him in the winter after the maturity and harvesting of the crops, and only about a month before the purchase of the hay. Was this rumor sufficient to impart notice of the existence of a lien on the crop? A constructive notice of a lien is effectual if it relates to pertinent facts which would induce an ordinarily prudent man to make inquiry in respect to further facts germane to the right in question. Here the ultimate fact was the tenancy of Cummings. (*Hayhurst v. Underwood,* 126 Kan. 349, 267 Pac. 965, and cases cited.) The Underwood case was another action brought by Hayhurst against another purchaser from Cummings of a portion of the crop involved here. The principal question in the case was the matter of constructive notice of a landlord's lien: It was held:

"The recording of a deed conveying title to land will not, in and of itself, be constructive notice of the existence of a landlord's lien on the crops grown thereon during the crop year in which the deed was given, when the former owner remains on the land after the date of the deed and harvests and ·sells such crops.

"The recording of an unacknowledged lease, which contains specific provisions giving the lessor a lien upon all the crops until the rent is paid, where such lease is withdrawn by the agent of the lessor immediately after being recorded, does' not, either as a lease or as a chattel mortgage, constitute constructive notice of the existence of a landlord's lien." (Syl.)

It will be observed that the rumor related to a trade or sale of the land by Cummings, and not that it had been leased to him by Hayhurst. A sale and a lease are separate and distinct transactions between which there is no necessary connection. The transfer of

title, as we have seen, was not made until the middle of the crop season, and the fact that the seller remained on the farm and harvested and sold the crops as his own was not unusual. Even if Saile had known of the transfer of title it would not have been information as to when possession was to be surrendered, much less that a lease had been made or that the vendor did not own and have the right to sell the partly grown crops. Possession continued uninterruptedly after a sale does not necessarily imply that the vendor is thereafter a tenant. In the Underwood case, *supra*, it was held that remaining in possession and growing crops after the vendor has parted with title is not pertinent information that he was then a tenant. It was said:

"This might, under some circumstances, be sufficient to constitute notice, but not as a general proposition. He might have had an oral reservation of the growing crops, as in the case of *Soeken v. Hartwig*, 124 Kan. 618, 261 Pac. 590, and doubtless many other circumstances might prevent such a conclusion following the mere giving and recording of a deed." (p. 351.)

Cummings had been selling some of his crops and applying some of the money on the rent. There was no attempt to show that the rumor was current or general in the neighborhood. Only one other person than Saile was shown to have heard the rumor, and he said he had heard it mentioned in the winter of 1925 and 1926. The evidence did not show that the rumor was common or notorious. Among other things, the court rightly instructed the jury that—

"Now there is testimony in this case to the effect that Saile had heard a rumor that Cummings had either exchanged or sold his place. If the rumor which he heard and the facts that he was put in possession of in connection with what he heard, are or were sufficient to put an ordinary average individual on inquiry, that is, if the facts and circumstances that he learned were such as to put an ordinary average person on inquiry, then he would buy the crops at his peril. . . . To recapitulate, gentlemen, I think it may be said that there isn't any dispute in regard to the fact that Hayhurst owned the land at the time this purchase was made by Saile. Now, if Saile was in possession of sufficient facts from what he knew, to put an ordinarily prudent person on inquiry, he should have pursued that inquiry before he paid. If he didn't have that kind of information, then he wasn't bound to go any further. That is the principal thing that you have got to decide in this case."

It has been decided that the burden of proving a notice in this class of cases is upon the landlord to show that the purchase was made with notice of the lien, and that bad faith in the purchaser cannot be presumed. The purchaser is not required to show his

good faith.  This burden rests upon the landlord.  (*Mangum v. Stadel*, 76 Kan. 764, 92 Pac. 1093.)  The character of the information that reached Saile, and whether it was such knowledge as should have put him upon inquiry as to the main fact of tenancy, was a fact for the jury to determine.  Our conclusion is that the evidence covering no more than the floating rumor which was not general or confirmed, and was so remote from the main fact, warranted the jury in finding that the property had been purchased without notice of the landlord's lien.

Plaintiff seems to rely largely on the decision in *Scully v. Porter*, 57 Kan. 322, 46 Pac. 313.  The record discloses that that case differs materially in its facts from the instant one.  There the land was owned by Scully and was rented to a tenant on exceptional terms, as were many other tracts, and that the land was rented was a matter of common knowledge in the community, in fact not open to question.  The purchaser had abundant notice to put him upon inquiry.  While it was said that the landlord has a lien on the crop without the formality of a writing or the making and recording of a lease contract, that does not carry the implication that a purchaser of a crop becomes liable to the landlord regardless of notice of the lien by the purchaser.  The statute in explicit terms makes notice to the purchaser a condition precedent to establishing a liability against him for the value of the crop purchased.

We discover no error in the judgment, and hence it is affirmed.