No. 34,496

FRED ALLEN and GERTRUDE ALLEN, *Appellees*, v. ANNA MURPHY, *Appellant.*

(98 P. 2d 90)

Opinion filed January 27, 1940.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Allen, Patrick B. McAnany* and *Thomas M. Van Cleave, Jr.*, all of Kansas City, for the appellant.

*Carl W. Fincke, Buford E. Braly* and *C. H. Rimann*, all of Kansas City, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover for alleged conversion of nursery stock, and from a judgment against her the defendant appeals.

In 1932 the title to a certain tract of 18 acres in section 5, township 12, range 23 in Johnson county, Kansas, was vested in plaintiff Fred Allen, but B. E. White, hereafter mentioned, was also interested in its ownership. On November 8, 1935, this tract was subject to mortgages of $4,400 and past-due interest and to unpaid taxes. Defendant Anna Murphy was the owner of a tract of 30 acres in section 31, township 11, range 23 in Wyandotte county, Kansas.

Under date of November 8, 1935, Anna Murphy entered into a contract with Fred Allen and wife and B. E. White under which Anna Murphy was to pay $1,000. Allens were to convey her their 18-acre tract subject to the mortgages, and Anna Murphy was to convey to White her 30 acres. Provisions about abstract of title, interest, insurance and taxes are not now material. The agreement, with the $1,000, the insurance policies and the two deeds were placed in escrow for delivery. Out of the $1,000, taxes and interest were to be paid, and $500 was to be paid Fred Allen. The agreement contained the following:

"Fred Allen and Gertrude Allen, his wife, agree to give possession of Johnson

county farm, described, on February 1, 1936, and to give possession of any vacant land not occupied by nursery stock or buildings upon the completion of this agreement.

"Anna Murphy agrees to give possession of Wyandotte land, above described, upon completion of this agreement."

The deed from Fred Allen and wife to Anna Murphy was an ordinary warranty deed, and contained no reservations or exceptions further than with respect to the mortgage encumbrance. The matters provided in the escrow agreement were duly performed and the deeds delivered.

Plaintiffs' petition alleged the execution and delivery of the deed in accordance with the contract above referred to; that at the time of the execution of the instruments and for some time prior plaintiffs were engaged in planting, raising and selling nursery stock upon a portion of the real estate described in the deed, and that at the time defendant took possession there was on the real estate certain nursery stock, a list of which was attached as an exhibit; that the nursery stock was personal property of the plaintiffs; that the major part of the consideration to plaintiffs was the reservation of the nursery stock to the plaintiffs, and that the land was conveyed subject to plaintiffs' right to remove the nursery stock in the early spring of the following year; that in accordance with the agreement and rights thereunder, plaintiffs attempted to remove the nursery stock, but were prevented by defendant, who converted the nursery stock to her own uses, to the damage of the plaintiffs in the sum of $5,200, for which they prayed judgment.

Defendant's motions to strike and to make definite and certain were denied and she answered, admitting execution and delivery of the agreement and deed and denying generally.

At the trial many of defendant's objections to the competency of plaintiffs' evidence were overruled, as was her demurrer to plaintiffs' evidence. At the conclusion of the introduction of the evidence, defendant moved for an instructed verdict in her favor, which was refused. The jury answered special questions submitted and returned a general verdict in favor of the plaintiffs for the sum of $2,500. Defendant's motions for judgment on the special findings and for a new trial were denied, and she appeals, her specifications of error covering all adverse rulings noted.

Considerable space in the briefs is devoted to the question whether the nursery stock was in the nature of an annual crop and as such could be the subject of an oral reservation and shown by parol

testimony where the deed was silent. As has been observed, plaintiffs acquired title to the 18-acre tract in 1932. Fred Allen testified in detail as to the nursery stock. The largest single item was purple lilacs, which he valued at $1,350, all of which were planted prior to 1930. The next largest items were arbor vitae, valued at $250, and spruce, fir, juniper and pine trees, valued at over $500, all planted prior to 1931. Various other shrubs and plants were listed, planted in 1932 and 1933, and the latest item planted was in 1934 and valued at $6.25. From the record it appears there was no annual gathering or removal of the various shrubs, trees, etc. While Allen testified that all of the stock was dormant, owing to the season, and was subject to being removed, his testimony was to the effect all was planted in the ground when the agreement was made. Thereafter on November 25 and December 15, 1935, and before he surrendered possession, he did undercut a great many of the shrubs, roots, etc., so that they might be removed, but that action on his part could not alter the rights of the parties under the agreement and the deed. Although the case is not strictly in point here, in *Kennedy v. Spalding*, 143 Kan. 76, 53 P. 2d 804, it was held:

"The word 'crops' as used in R. S. 67-524 and 67-526, is held to mean any product of the soil that is grown and raised annually and gathered during a single season, and it is held further that a nursery stock of fruit trees, ornamental trees and shrubs and bushes, all two or more years old, does not come under the terms of the statute." (Syl. ¶ 2.)

If it be assumed, however, that a nursery stock such as is involved here may be likened to and treated as an annual crop, then it would be permissible to show by parol there had been reservation thereof. (*Dannefer v. Aurand*, 106 Kan. 605, syl. ¶ 4, 189 Pac. 371; *Peterson, Admr., v. Honaker*, 114 Kan. 752, 220 Pac. 1025; *Soeken v. Hartwig*, 124 Kan. 618, syl. ¶ 1, 261 Pac. 590; *Hayhurst v. Underwood*, 126 Kan. 349, 351, 267 Pac. 965; *Hayhurst v. Saile*, 130 Kan. 844, 846, 288 Pac. 539; 8 R. C. L. [Crops, § 17] 372; 15 Am. Jur. [Crops, § 13] 205.) We shall assume the evidence tending to show reservation by parol was not subject to objection.

Appellant contends her demurrer to plaintiffs' evidence should have been sustained. Consideration of that contention involves also the competency of certain of that evidence. The plaintiff Gertrude Allen did not testify, and the record discloses no more than that she was a party to the deed to Anna Murphy. Plaintiff Fred Allen testified that he acquired the real estate in December, 1932, from B. E. White as receiver of the Kansas City Nurseries Company,

apparently a bankrupt concern, and that White and one Mellott had an interest in the property. He and Mr. White had some conversations about selling the property, following which White carried on negotiations with Miss Murphy which ultimately resulted in the agreement for exchange of the two pieces of real estate. Mr. Allen didn't talk to Miss Murphy concerning the agreement or the matters entering into it. Notwithstanding, Allen's attention was directed to the provisions of the agreement concerning possession by Miss Murphy, and over repeated objections that his evidence was an attempt to prove a reservation by parol, and was incompetent and hearsay, he was permitted to testify that White had told him he was to get the nursery stock, and that he had leased other ground on which to place it. The first part of the objection has been discussed. The trial court's theory seems to have been there was some doubt whom White was representing. We have examined the abstracts fully and find no evidence that even suggests he represented anyone except Allen and himself. What Allen says White told him was hearsay as to the defendant Murphy and should have been excluded. White was a witness for plaintiff and testified at length about his negotiations with Miss Murphy and that he was acting as an interested holder of the real estate and for Mr. Allen. On his direct examination he testified concerning other details of the agreement and that Miss Murphy was to have possession of the plowed land at the time of signing the agreement and on February 1 complete possession without any qualifications or reservations. He also testified as follows:

"What was the—what did you and the parties, all of you, Miss Murphy and all of you, understand as the vacant ground? The unoccupied ground? A. That would be any land not occupied with any nursery stock.

"Q. Why was that provision put in this agreement here, that the ground unoccupied by nursery stock was not to be—possession was not to be given until February first? A. Well, I was trying to get as good a deal for Fred as I could, and any nursery stock he could sell up to February first he could sell.

"Q. In other words, at the time this contract was signed on November 8, 1935, Fred Allen was to have the nursery stock on the property there? A. He could sell it in the normal course of business, and what he sold he could keep.

"Q. The normal course of business would mean the wholesale sale of that stuff to another nursery company, wouldn't it? A. That is right.

"Q. And if Fred Allen had sold all of that nursery stock there would not have been any objection by any of the parties to this agreement, if he had sold it prior to February first; is that right? A. If he had made a complete sale that would be O. K.

"Q. That was one of the things set out in this contract, or one of the things understood by the parties, was it?

[Objections.]

"A. That was my understanding.

"Q. Was that the reason that this possession clause was put in there, about giving possession of the vacant ground at the time, and the ground occupied by the nursery stock at another? A. I would not say that was the reason. It was expected that Mr. Allen, in the normal course of business, would sell maybe two or three hundred dollars' worth of stuff, and I represented to Miss Murphy that was probably, judging from our past experience, what he would do; and in our conversations with Mr. Allen that was our idea.

"Q. You mean your idea and Miss Murphy's? A. That was Fred's expectation and mine at the time, as we talked it over."

and—

'"Q. But when this agreement was made, the understanding was that Fred could sell it and if he could, customers for it could sell all of it; is that right? A. That was not in the contract. The agreement was that what he could sell he could have."

On cross-examination he testified as follows:

"Q. You have testified that in discussing the nursery stock on this property, you—prior to the time this agreement was made, you mentioned something to Mr. Allen—or about Mr. Allen selling some of it? A. Yes, sir.

"Q. Now, what did you say to her about that? A. I told her that in all likelihood Mr. Allen would sell two or three hundred dollars' worth of stock prior to February first.

"Q. Did you tell her what was to become of the stock that he didn't sell? A. She was to have what was not sold.

"Q. And you told her that? A. Yes. On the first of February she was to have the farm and all the nursery stock that was there.

"Q. And that is what you now say you [sold] her? A. Yes, sir; that is what we sold her.

"Q. Was Mr. Allen to move this nursery stock off of there? A. He was to have what he could sell.

"Q. What he sold to customers? A. That is right.

"Q. And was he to move all of it off of there? A. He had no authority to remove any of it to transplant it. All he could do was he could have what he could sell.

"Q. And what was left on there on February first was to be Miss Murphy's? A. That is right.

"Q. And there was not any misunderstanding about that? A. None whatever."

There was no other competent evidence which disputes the agreement made by White as an interested party and as agent for Allen, with Miss Murphy, and as shown above. There was some evidence that after the agreement was made Allen sold $100 to $150 worth of

nursery stock of which he apparently made delivery, but there was no showing that prior to February 1, 1936, he sold any of the nursery stock which he did not deliver. Plaintiffs' theory was they were entitled to remove all the nursery stock. The evidence failed to sustain such a theory, and defendant's demurrer should have been sustained.

In view of our conclusions, it is not necessary to consider other specifications of error.

The judgment of the trial court is reversed with directions to order judgment in favor of the defendant.