McCOY v. COMMISSIONER OF INTERNAL REVENUE.

No. 4271.

United States Court of Appeals Tenth Circuit.

Nov. 12, 1951.

Robert Ash, Washington, D. C. (Charles H. Burton, Washington, D. C., and Carroll Walker, Frankfort, Kan., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented by this appeal is whether the entire gain realized on a sale of a farm owned by a taxpayer for more than six months and used in his business as a farmer and having on it at the time of sale a growing wheat crop is to be treated as capital gain, under § 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j), or whether a portion thereof must be allo-

cated to the growing crop and be treated as ordinary income from the taxpayer's business of raising, harvesting and marketing grain.

Thomas J. McCoy, herein called the taxpayer, was a farmer, engaged in the business of producing and selling wheat. In 1946 he purchased six hundred forty acres of land in Sheridan County, Kansas, for $18,500, and on May 21, 1947, he sold the land, together with a growing, immature, winter wheat crop for $32,000. The taxpayer transferred title and gave immediate possession to the purchaser. The growing wheat matured and was ready for harvest early in July. The purchaser harvested it at a cost of approximately $2000 and sold it for a total of $12,231.20. In his income tax return for the year 1946, the taxpayer deducted from gross income all expenses relating to the planting of the crop of wheat. In his 1947 return, he treated the sale of the farm as a unit sale of real estate, used in his business of farming, and returned the entire net gain realized on the sale as capital gain. The Commissioner of Internal Revenue determined in effect that $8,500 of the gain realized from the sale transaction of the real estate was attributable to the sale of the growing crop of wheat and was taxable as ordinary income, and that only the balance of the gain was attributable to the sale of the land and was taxable as capital gain. On review, the Tax Court sustained the action of the Commissioner and this appeal followed.

[1] Kansas, in line with the general rule, has consistently held that an immature, growing crop is a part of the real estate and that in the absence of rights of third parties a conveyance of the land, whether by voluntary deed or through judicial proceedings, without reservation carries all such crops with the title to the land.[1] While Kansas recognizes the right of an owner of land with a growing crop thereon to separately sell or mortgage the crop, it has held that a growing and immature crop is not subject to levy and sale

---

1. Chapman v. Veach, 32 Kan. 167, 4 P. 100; Garanflo v. Cooley, 33 Kan. 137, 5 P. 766; Missouri Val. Land Co. v. Barwick, 50 Kan. 57, 31 P. 685; First National Bank of Clay Center v. Beegle, 52 Kan. 709, 35 P. 814; Brendle v. Hudson, 146 Kan. 924, 73 P.2d 1013; Jones v. Anderson, 171 Kan. 430, 233 P.2d 483.

under attachment or execution as personal property, separate and apart from the land.[2] In other words, Kansas treats growing crops as a part of the real estate to which they are attached and thus considers such crops as real estate. And there is logic and reason behind this. Growing crops depend for their life upon the real estate of which they are a part. They draw their food and sustenance therefrom. Separate them from the real estate and they cease to exist and die. Except as a part of the real estate, a growing immature crop has no value.

■ It is, of course, elemental that Congress, in the exercise of its plenary powers under the Constitution to levy and collect taxes, is not bound by the substantive law of the state with respect to the status that shall be accorded property for taxation purposes. It is free to determine the manner in which such property shall be treated and the extent to which it or any interest therein is to be taxed.[3] The right to a capital gain tax on the sale of a capital asset exists only as a matter of legislative grace. Congress could have provided that gain resulting from the sale of a capital asset should be treated as ordinary income and be taxed as such. So Congress also could have provided that in the event of a sale of a capital real estate asset only such value as was attributable to the naked land itself should be taxed as a capital gain and that such enhanced values as resulted from fences, buildings or other permanent improvements, or from growing crops, although elements of real estate value, should be taxed under the ordinary income tax provisions. Whether Congress has so treated these special elements of real estate value, or any of them, or has used the term "real estate" as defined by the substantive law of the state must be determined from the language of the applicable provisions of the Revenue Act.

■ The critical language of Section 117(j) (1) of the Revenue Act of 1946 and 1947 defines a capital real estate asset as "real property used in the trade or business, held for more than 6 months, * * *." The words "real property" are used without qualification. Neither is there anything in the legislative history of the Act which we are able to find, indicating that Congress used the term "real property" in any other than its accepted and commonly understood meaning and as defined in the decisions of Kansas. McCoy was not engaged in the business of producing and selling immature crops of wheat. His business was that of producing, harvesting and selling mature grain in the ordinary course of business. It follows that no part of the transaction resulting in the sale of this land was an operation carried on in the course of his business of producing, harvesting and selling ripened grain. The sale was a unit sale of a piece of real estate used in his business of producing and selling grain. The real estate in question had been so used in the business for more than six months and the sale resulted in a capital gain.[4]

■ Section 323 of the Revenue Act of 1951, 26 U.S.C.A. § 117(j), specifically provides that immature crops of growing grain, when sold with the real estate, shall be treated as a part of the real estate for the purpose of computing capital gain.[5] It al-

2. C. C. Isely Lumber Co. v. Kitch, 123 Kan. 441, 256 P. 133; Soeken v. Hartwig, 124 Kan. 618, 261 P. 590; Citizens' State Bank v. Clark, 126 Kan. 162, 266 P. 932; Danville State Bank v. May, 126 Kan. 714, 271 P. 302; Blattler v. Westerman, 130 Kan. 415, 286 P. 217.

3. Burnett v. Harmel, 287 U.S. 103, 53 S. Ct. 74, 77 L.Ed. 199; Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035.

4. To the same effect see Irrgang v. Fahs, D.C., 94 F.Supp. 206; Cole v. Smyth, D.C., 96 F.Supp. 745.

5. "(a) Treatment of gain or loss.—Section 117(j) (relating to sale or exchange of property used in the trade or business) is hereby amended—
   "(1) By inserting immediately before the period at the end of the second sentence of paragraph (1) thereof the following: 'and unharvested crops to which paragraph (3) is applicable'; and
   "(2) By adding at the end thereof a new paragraph to read as follows:
   " '(3) Sale of land with unharvested crop.—In the case of an unharvested crop on land used in the trade or business and held for more than 6 months, if the crop

so contains new Subsection 3, directing how the capital gain shall be computed in such a case. We think that the Senate Committee Report, where this Amendment arose, makes it clear that the purpose of the Amendment was to clarify the status of such crops for income tax purposes, rather than to evidence a change in Congressional policy.[6]

The decision of the Tax Court is reversed.

## UNITED STATES STEEL CO. v. BURKETT et al.
### No. 6304.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 9, 1951.

Decided Nov. 5, 1951.

and the land are sold or exchanged (or compulsorily or involuntarily converted as described in paragraph (2))· at the same time and to the same person, the crops shall be considered as 'property used in the trade or business'."

6. The Senate Finance Committee Report, accompanying the bill, included the following with reference to Section 323.

"Sales of land with unharvested crops.

"Section 117(j) of the code provides, in effect, that a net gain from sales of properties 'used in the trade or business' of the taxpayer, including 'real property' so used, if held more than six months is to be treated as capital gain. In the case of a net loss, it is treated as an ordinary loss. Where unharvested crops are sold with the land, or unripe fruit is sold together with the land and the trees, a difficult question has arisen as to the proper application of the present law to the unharvested crops or the unripe fruit.

"The Bureau of Internal Revenue has ruled that, whether or not such crops or fruit are regarded as a part of the real estate under local law, they constitute property held 'primarily for sale to customers in the ordinary course of his (the taxpayer's) trade or business' and thus, under the provisions of Section 117(j), any gain on the sale of the unharvested crops or unripe fruit is to be separately determined and treated as ordinary income instead of as a capital gain. In several decisions the Tax Court (with some members dissenting) has taken a similar view, but two district courts have held that such fruits or crops constitute 'property used in the trade or business' so that a gain from a sale of the land, trees, and fruit would be treated as a capital gain with the result that the entire gain from the sale of such property would constitute capital gain.

"Your committee believes that sales of land together with growing crops or fruit are not such transactions as occur in the ordinary course of business and should thus result in capital gains rather than in ordinary income. Section 323 of the bill so provides.

"Your committee recognizes, however, that when the taxpayer keeps his ac-

Thomas W. Moses and Charles M. Love, Charleston, W. Va. (Dayton, Campbell & Love, Charleston, W. Va., on brief), for appellant.

L. F. Poffenbarger and John H. Goad, Charleston, W. Va. (Poffenbarger & Bowles and Goad & Goad, all of Charleston, W. Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

counts and makes his returns on the cash receipts and disbursements basis, the expenses of growing the unharvested crop or the unripe fruit will be deducted in full from ordinary income, while the entire proceeds from the sale of the crop, as such, will be viewed as a capital gain. Actually, of course, the true gain in such cases is the difference between that part of the selling price attributable to the crop or fruit and the expenses attributable to its production. Therefore, your committee's bill provides that

no deduction shall be allowed which is attributable to the production of such crops or fruit, but that the deductions so disallowed shall be included in the basis of the property for the purpose of computing the capital gain.

"The provisions of this section are applicable to sales or other dispositions occurring in taxable years beginning after December 31, 1950.

"The revenue loss under this provision is expected to be about $3 million annually."